CV 10 4572

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D N.Y

★   OCT 01 2010   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

(cs-I.)

|  |  |
|---|---|
| ROBBIE BENSLEY, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>        vs.<br><br>FALCONSTOR SOFTWARE, INC., REIJANE HUAI, WAYNE LAM and JAMES WEBER,<br><br>                    Defendants. | Civil Action No.<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

KORMAN, J.

POLLAK, M.

★FILED★
2010 SEP 31 PM 4:45
CLERK
U.S. DISTRICT COURT
E.D.N.Y.
AFTER HOURS DROP BOX

Plaintiff has alleged the following based upon the investigation of Plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by FalconStor Software, Inc. ("FalconStor" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal class action on behalf of purchasers of the common stock of FalconStor between February 5, 2009 and September 29, 2010, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act.

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b).  Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.

5.      In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.      Plaintiff Robbie Bensley, as set forth in the accompanying certification and incorporated by reference herein, purchased the common stock of FalconStor during the Class Period and has been damaged thereby.

7.      Defendant FalconStor develops, manufactures, and sells network storage software solutions in the United States, and internationally. It also provides related maintenance, implementation, and engineering services.

8.      (a)      Defendant ReiJane Huai ("Huai") was, at all relevant times, Chairman, Chief Executive Officer and President of FalconStor.

        (b)      Defendant Wayne Lam ("Lam") is the Company's Co-Founder and was, at all relevant times, Vice President of FalconStor.

        (c)      Defendant James Weber ("Weber") was, at all relevant times, Chief Financial Officer, Principal Accounting Officer, Vice President and Treasurer of FalconStor.

        (d)      Defendants Huai, Lam and Weber are collectively referred to herein as the "Individual Defendants."

9.      During the Class Period, the Individual Defendants, as senior executive officers and/or directors of FalconStor, were privy to confidential and proprietary information concerning FalconStor, its operations, finances, financial condition and present and future business prospects. The Individual Defendants also had access to material adverse non-public information concerning FalconStor, as discussed in detail below. Because of their positions with FalconStor, the Individual Defendants had access to non-public information about its business, finances, products, markets and present and future business prospects via internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof and via reports and other information provided to them in

- 2 -

connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

10. The Individual Defendants are liable as direct participants in the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of Section 20(a) of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of FalconStor's business.

11. The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

12. As senior executive officers and/or directors and as controlling persons of a publicly traded company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on The NASDAQ Stock Market ("NASDAQ") and governed by the federal securities laws, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with respect to FalconStor's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously issued statements that had become

- 3 -

materially misleading or untrue, so that the market price of FalconStor common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

13.     The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of FalconStor common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding FalconStor's business, operations and management and the intrinsic value of FalconStor common stock; (ii) enabled the Individual Defendants and certain Company insiders to collectively sell 126,838 shares of their personally-held FalconStor common stock for gross proceeds of $545,048; and (iii) caused Plaintiff and members of the Class to purchase FalconStor common stock at artificially inflated prices.

## CLASS ACTION ALLEGATIONS

14.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased the common stock of FalconStor between February 5, 2009 and September 29, 2010, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

15.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, FalconStor common stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may

- 4 -

be identified from records maintained by FalconStor or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

16. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law complained of herein.

17. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

18. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of FalconStor;

(c) whether the price of FalconStor common stock was artificially inflated during the Class Period; and

(d) to what extent the members of the Class have sustained damages and the proper measure of damages.

19. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of

individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

20.     Defendant FalconStor describes itself as the "market leader in disk-based data protection. FalconStor delivers proven, comprehensive data protection solutions that facilitate the continuous availability of business-critical data with speed, integrity and simplicity."

21.     The Class Period begins on February 5, 2009. On that date, FalconStor issued a press release announcing its financial results for the fourth quarter and year end of 2008, the period ended December 31, 2008. For the quarter, the Company reported revenues $23.4 million and GAAP net income of $0.6 million, or $0.01 per diluted share. Defendant Huai, commenting on the results, stated, in pertinent part, as follows:

> The difficult economic environment hurt our results for 2008. But we still believe we are well positioned for long term success both financially, as demonstrated by our increase in cash flows from operations and with our product portfolio. To cope with the challenging economy and constrained budgets, corporate IT must deliver extraordinary management and operating efficiency – creating an ideal opportunity for FalconStor's TOTALLY Open Data Protection solutions. Validated by elite Fortune 100 accounts and endorsed by strategic OEM partners, FalconStor solutions will continue to expand in key growth segments of the storage market -- virtualization, CDP/replication, VTL, and file deduplication -- by leveraging our unique product synergy and offering tangible business value that enriches customers' revenues and bottom line.

22.     With regard to the Company's outlook for the year ending December 31, 2009, the press release stated, in pertinent part, as follows:

For the year ending December 31, 2009, the Company anticipates:

- Revenues to be in the range of $96 million to $100 million

- Non-GAAP net income to be between $0.18 and $0.21 per diluted share, which excludes stock-based compensation, net of income taxes.

23.     In reaction to the Company's fourth quarter and year end financial results, on February 6, 2009, shares of the Company's stock rose $0.40 per share, or 12%, to close at $3.77 per share.

24.     On April 28, 2009, FalconStor issued a press release announcing its financial results for the first quarter of 2009, the period ended March 31, 2009. For the quarter, the Company reported revenues of $21.0 million and a GAAP net loss of $0.9 million, or $0.02 per share. Moreover, the Company confirmed its guidance for the year ending December 31, 2009. Defendant Huai, commenting on the results and the Company's outlook, stated, in pertinent part, as follows:

> We are pleased that we are on track to achieve our full-year target even in this difficult macroeconomic environment. We are confident that our continued investment in development, marketing, sales, and support will enable us to expand our market share and to leapfrog the competition. As a result, we have continued to hire, knowing that it may impact our earnings in the short-term, but we believe it will foster the long-term growth of the company. Even with these investments, we are pleased that we had a non-GAAP profit for the quarter and that we continued to generate positive cash flows from operations.

25.     In reaction to the Company's 2009 first quarter earnings announcement and confirmed guidance for 2009, on April 29, 2009, shares of the Company's stock rose $0.36 per share, or 10%, to close at $3.83 per share.

26.     On July 28, 2009, FalconStor issued a press release announcing its financial results for the second quarter of 2009, the period ended June 30, 2009. For the quarter, the Company reported revenues of $24.5 million and GAAP net income of $1.3 million, or $0.03 per diluted share. Moreover, the Company once again confirmed its guidance for the year ending December 31, 2009. Defendant Huai, commenting on the results and the Company's outlook, stated, in pertinent part, as follows:

> We are pleased with the performance of our business from operational, financial and strategic perspectives. Our ongoing investment in R&D and our pro-active expansion of field sales and support capacity enable our channel partners to deliver TOTALLY Open storage virtualization, continuous data protection, and

deduplication solutions with compelling business advantages. Our continued growth should encourage more industry partners to leverage our state-of-the-art software to enhance their network storage solutions supported by our global support infrastructure."

27.     On October 28, 2009, FalconStor issued a press release announcing its financial results for the third quarter of 2009, the period ended September 30, 2009. For the quarter, the Company reported revenues of $21.5 million and a GAAP net loss of $2.0 million, or $0.05 per share. Defendant Huai, commenting on the results, stated, in pertinent part, as follows:

The increasing level of field activities with industry and channel partners is a recognition of our ability to reduce operating costs for our customers and to optimize business continuity with Totally Open data protection solutions. We will continue to invest in sales, marketing and support infrastructure to bolster our brand and to accelerate business momentum through the channel.

28.     The statements referenced above in ¶¶21-22, 24, 26-27 were each materially false and misleading when made because they misrepresented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them:

(a)     that the Company was experiencing weak demand for its products and services;

(b)     that the Company was making improper payments to secure a contract with at least one of the Company's customers; and

(c)     as a result of the foregoing, Defendants lacked a reasonable basis for their positive statements about the Company and its prospects.

29.     On January 14, 2010, the Company issued a press release announcing its preliminary financial results for the fourth quarter and year end of 2009, the period ended December 31, 2009. For the quarter, the Company anticipated "fourth quarter revenue to be in the range of $21.5 to $22.0 million, and non-GAAP net loss per share to be between $0.02 and $0.03 per share" – far below the

range the Company told investors on February 5, April 28 and July 28, 2009.  With regard to the

Company's reason for the revenue miss, the press release stated, in pertinent part, as follows:

> The revenue shortfall in 2009 was mainly the result of lower than expected software
> license revenue from OEMs.  On a year over year basis, gross software license
> revenue from OEMs decreased by approximately 24%, or $6.7 million.  Three OEMs
> were responsible for most of this shortfall.  During the fourth quarter of 2009,
> Hewlett Packard announced it was acquiring 3Com, the parent of H3C, one of the
> Company's OEMs.  The change of ownership caused a change in H3C's historical
> licensing practices that resulted in revenue from H3C that was over $2 million lower
> in Q4 on a year over year basis.  The ongoing delay of the proposed merger of Sun
> Microsystems, another of the Company's OEMs, into Oracle, resulted in a shortfall
> in projected revenue from Sun.  Revenues from EMC, our largest customer, were
> also below our expectations.

Defendant Huai, commenting on the disappointing results, stated, in pertinent part, as follows:

> Although we were disappointed with the revenue shortfall from our OEMs, we were
> pleased in the growth of our non-OEM business.  We have begun to see the positive
> results of our investments in nurturing the non-OEM business.  In 2009, our non-
> OEM gross software license revenue increased 15% year over year.  We expect
> continuing growth of our non-OEM business into 2010 and beyond by leveraging our
> competitive product portfolio, credible end-user references and committed channel
> partners on the worldwide basis.

30.    In reaction to the Company's preliminary 2009 fourth quarter and year end earnings

announcement, on January 15, 2010, shares of the Company's stock fell $0.80 per share, or 18%, to

close at $3.69 per share.  Defendants, however, continued to conceal the true scope and extent of

FalconStor's problems.

31.    On February 4, 2010, FalconStor issued a press release announcing its results for the

fourth quarter and year end of 2009, the period ended December 31, 2009.  For the quarter, the

Company reported revenues of $22.4 million and a GAAP net loss of $1.5 million, or $0.03 per

basic share.  Defendant Huai, commenting on the results, stated, in pertinent part, as follows:

> Though revenues for fiscal year 2009 fell short of projections, our revenues
> continued to grow in one of the slowest economies in decades.  Our investment in
> global non-OEM channels has produced 15 percent annual software revenue growth
> by enabling our partners to deliver storage virtualization, deduplication and
> continuous data protection solutions with compelling price/performance ratio and

> profit margins. We are confident in our ability to accelerate sales and earnings growth by leveraging the channel momentum, strategic alliances, product innovations and credible enterprise references.

With regard to the Company's outlook, Jim McNiel, Chief Strategy Officer of FalconStor, stated, in

pertinent part, as follows:

> FalconStor is well positioned to deliver a comprehensive suite of data protection solutions. The careful packaging and positioning of these technically advanced offerings will help to move FalconStor firmly into the $10 billion storage management market.

32.     Upon these announcements, shares of the Company's stock fell $0.32 per share, or

9%, to close at $3.07 per share.

33.     On April 19, 2010, FalconStor issued a press release announcing its preliminary

results for the first quarter of 2010, the period ended March 31, 2010. For the quarter, the Company

expected revenue to be in the range of $16.8 to $17.1 million and non-GAAP net loss per share to be

between $0.08 and $0.09 per share. The Company blamed the "revenue shortfall" on "lower than

expected software license revenue," especially internationally. Defendant Huai, commenting on the

preliminary results, stated, in pertinent part, as follows:

> Although our results were lower than we anticipated, we are still experiencing a strong pipeline and interest for our innovative solutions which offer a compelling price/performance ratio. In response to the revenue shortfall in the first quarter, we have delayed any additional hiring until we return to year over year revenue growth and we are evaluating other cost saving initiatives. We will not be giving any guidance for the year until our channel business reaches a steady predictable state.

34.     Upon these announcements, shares of the Company's stock fell $0.14 per share, or

4%, to close at $3.12 per share.

35.     On April 28, 2010, FalconStor issued a press release announcing its results for the

first quarter of 2010, the period ended March 31, 2010. For the quarter, the Company reported

revenues of $17.1 million and a GAAP net loss of $5.5 million, or $0.12 per share. Defendant Huai,

commenting on the results, stated, in pertinent part, as follows:

Besides expense containment/reduction, we are also focusing on capturing growth opportunities in data deduplication, data protection and cloud-based services. Through strategic partnerships and cloud-based services we believe we will be able to accelerate the market awareness/acceptance of our solutions and produce long term shareholder value.

36.     On July 28, 2010, FalconStor issued a press release announcing its results for the

second quarter of 2010, the period ended June 30, 2010.  For the quarter, the Company reported

revenues of $20.3 million and a GAAP net loss of $3.4 million, or $0.07 per share.  Defendant Huai,

commenting on the results, stated, in pertinent part, as follows:

We are pleased with the continuing ramp up of the sales of our branded solutions around the world.  We expect the recently established strategic partnerships with top-tier storage vendors to accelerate the sales of our data deduplication and replication solutions, and boost our brand recognition in the channel.  Coupled with ongoing expense-control and operational discipline, we are expecting to continue to enhance our financial performance and to increase shareholder value.

37.     Then, on September 29, 2010, the Company issued a press release announcing that

Defendant Huai "resigned from all of his positions with the Company, effective immediately." The

press release stated that Defendant Huai "tendered his resignation following his disclosure that

certain improper payments were allegedly made in connection with the Company's contract with one

customer." The press release continued, in pertinent part, as follows:

The Company has fully cooperated with law enforcement authorities with respect to the ongoing investigation, and it will continue to do so.  In addition, a special committee of the Board has been formed to conduct a full internal investigation of these matters and the special committee has retained counsel to assist it in its investigation.

38.     In reaction to Defendant Huai's resignation and the revelation of improper payments

to a certain customer, shares of the Company's stock fell $0.91 per share, or 22%, to close at $3.15

per share, on unusually heavy trading volume.

39.     The market for FalconStor common stock was open, well-developed and efficient at

all relevant times.  As a result of these materially false and misleading statements and failures to

- 11 -

disclose, FalconStor common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired FalconStor common stock relying upon the integrity of the market price of FalconStor common stock and market information relating to FalconStor, and have been damaged thereby.

40.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of FalconStor common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

41.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about FalconStor's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of FalconStor and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

**Additional Scienter Allegations**

42.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were

- 12 -

materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding FalconStor, their control over, and/or receipt and/or modification of FalconStor's allegedly materially misleading misstatements and/or their associations with the Company, which made them privy to confidential proprietary information concerning FalconStor, participated in the fraudulent scheme alleged herein.

43.     Defendants were further motivated to engage in this course of conduct in order to allow the Individual Defendants and certain Company insiders to collectively sell 126,838 shares of their personally-held FalconStor common stock for gross proceeds of $545,048. The following chart sets forth the insider trading:

| Insider | Date | Shares | Price | Proceeds |
|---------|------|--------|-------|----------|
| REIJANE HUAI | 08/19/09 | 8,900 | $5.05 | $44,945 |
| | 08/19/09 | 3,147 | $5.07 | $15,955 |
| | 08/19/09 | 2,800 | $5.06 | $14,168 |
| | 08/19/09 | 1,800 | $5.11 | $9,198 |
| | 08/19/09 | 1,200 | $5.17 | $6,204 |
| | 08/19/09 | 900 | $5.13 | $4,617 |
| | 08/19/09 | 700 | $5.10 | $3,570 |
| | 08/19/09 | 500 | $5.15 | $2,575 |
| | 08/19/09 | 500 | $5.16 | $2,580 |
| | 08/19/09 | 200 | $5.12 | $1,024 |
| | 08/19/09 | 153 | $5.05 | $773 |
| | 08/19/09 | 100 | $5.14 | $514 |
| | 08/20/09 | 8,787 | $5.11 | $44,902 |
| | 08/20/09 | 8,577 | $5.10 | $43,743 |
| | 08/20/09 | 2,336 | $5.12 | $11,960 |
| | 08/20/09 | 1,900 | $5.13 | $9,747 |
| | 08/20/09 | 1,800 | $5.09 | $9,162 |
| | 08/20/09 | 1,400 | $5.15 | $7,210 |
| | 08/20/09 | 600 | $5.14 | $3,084 |
| | 08/20/09 | 400 | $5.20 | $2,080 |
| | 08/20/09 | 300 | $5.19 | $1,557 |
| | 08/20/09 | 300 | $5.14 | $1,542 |
| | 08/20/09 | 200 | $5.08 | $1,016 |
| | 08/20/09 | 200 | $5.17 | $1,034 |

| Insider | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| | 08/20/09 | 200 | $5.12 | $1,024 |
| | 08/20/09 | 100 | $5.14 | $514 |
| | 08/20/09 | 100 | $5.18 | $518 |
| | | 48,100 | | $245,216 |
| | | | | |
| WAYNE LAM | 11/24/09 | 10,000 | $3.85 | $38,500 |
| | 03/15/10 | 14,586 | $3.75 | $54,698 |
| | 03/15/10 | 4,349 | $3.77 | $16,396 |
| | 03/15/10 | 965 | $3.76 | $3,628 |
| | 03/15/10 | 100 | $3.78 | $378 |
| | 07/07/10 | 3,537 | $2.66 | $9,408 |
| | 07/14/10 | 19,201 | $2.74 | $52,611 |
| | | 52,738 | | $175,619 |
| | | | | |
| JAMES WEBER | 08/21/09 | 10,000 | $5.40 | $54,000 |
| | | 10,000 | | $54,000 |
| | | | | |
| BERNARD WU | 08/20/09 | 6,000 | $5.20 | $31,200 |
| | 03/11/10 | 9,400 | $3.90 | $36,660 |
| | 03/11/10 | 300 | $3.91 | $1,173 |
| | 03/11/10 | 100 | $3.92 | $392 |
| | 03/11/10 | 100 | $3.94 | $394 |
| | 03/11/10 | 100 | $3.95 | $395 |
| | | 16,000 | | $70,214 |
| | | | | |
| | | 126,838 | | $545,048 |

## Loss Causation/Economic Loss

44.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of FalconStor common stock and operated as a fraud or deceit on Class Period purchasers of FalconStor common stock by failing to disclose and misrepresenting the adverse facts detailed herein. When Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of FalconStor common stock fell precipitously as the prior artificial inflation came out. As a result of their purchases of FalconStor common stock during the Class Period, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws.

45.     By failing to disclose to investors the adverse facts detailed herein, Defendants presented a misleading picture of FalconStor's business and prospects. Defendants' false and

misleading statements had the intended effect and caused FalconStor common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $5.57 per share on July 24, 2009.

46.     As a direct result of the disclosures on January 14, February 4, April 19 and September 29, 2010, the price of FalconStor common stock fell precipitously. These drops removed the inflation from the price of FalconStor common stock, causing real economic loss to investors who had purchased FalconStor common stock during the Class Period.

47.     The declines in the price of FalconStor stock were the direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the price declines in FalconStor common stock negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to Defendants' fraudulent conduct. The economic loss, *i.e.*, damages, suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the prices of FalconStor common stock and the subsequent significant decline in the value of FalconStor common stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

### Applicability of Presumption of Reliance:
### Fraud on the Market Doctrine

48.     At all relevant times, the market for FalconStor common stock was an efficient market for the following reasons, among others:

(a)     FalconStor common stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     as a regulated issuer, FalconStor filed periodic public reports with the SEC and the NASDAQ;

- 15 -

      (c)     FalconStor regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

      (d)     FalconStor was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

49.     As a result of the foregoing, the market for FalconStor common stock promptly digested current information regarding FalconStor from all publicly available sources and reflected such information in the prices of the stock. Under these circumstances, all purchasers of FalconStor common stock during the Class Period suffered similar injury through their purchase of FalconStor common stock at artificially inflated prices and a presumption of reliance applies.

<strong>No Safe Harbor</strong>

50.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was

- 16 -

false, and/or the forward-looking statement was authorized and/or approved by an executive officer of FalconStor who knew that those statements were false when made.

## COUNT II

### Violation of Section 10(b) of
### the Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

51.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52.     During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

53.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

54.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for FalconStor common stock. Plaintiff and the Class would not have purchased FalconStor common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

55.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of FalconStor common stock during the Class Period.

- 17 -

## COUNT III

### Violation of Section 20(a) of
### the Exchange Act Against the Individual Defendants

56.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

57.     The Individual Defendants acted as controlling persons of FalconStor within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By reason of their positions as officers and/or directors of FalconStor, and their ownership of FalconStor common stock, the Individual Defendants had the power and authority to cause FalconStor to engage in the wrongful conduct complained of herein.  By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: October 1, 2010

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA JR.

_____
            SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax) (fax)

HOLZER HOLZER & FISTEL LLC
MICHAEL I. FISTEL, JR.
200 Ashford Center North, Suite 300
Atlanta, GA 30338
Telephone: 770/392-0090
770/392-0029 (fax)

DYER & BERENS LLP
JEFFREY A. BERENS
303 East 17th Avenue, Suite 300
Denver, CO 80203
Telephone: 303/861-1764
303/395-0393 (fax)

Attorneys for Plaintiff

- 19 -

## CERTIFICATION OF PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned declares, as to the claims asserted under the federal securities laws, that:

1.     The undersigned has reviewed the complaint and approves its filing.

2.     The undersigned did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in this lawsuit.

3.     The undersigned is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.     The undersigned's purchases and sales of FalconStor Software, Inc. common stock during the class period are as follows:

| Transaction Date | # of Shares | Buy or Sell | Price/Share |
|---|---|---|---|
| 9-21-10 | 2000 | Buy | 3.9275 |
| 9-24-10 | 2000 | Buy | 3.8563 |

5.     During the three years prior to the date of this certificate, the undersigned has sought to serve or served as a representative party for a class in the following actions under the federal securities laws (if any):

6.     The undersigned will not accept any payment for serving as a representative party on behalf of the class beyond the undersigned's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.   Executed on September ~~11~~ Oct. 1st, 2010.

_____
Robbie Bensley