UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
WILLIAM BURNS AND THERESA BLACK,
*Individually and on Behalf of all Others*
*Similarly Situated,*

                          Plaintiffs,

       -against-

FALCONSTOR SOFTWARE, INC., et al.,

                        Defendants.
-----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

10 CV 4572 (ERK)

On October 1, 2010, a securities class action[1] was commenced against defendant

FalconStor Software, Inc. ("FalconStor" or the "Company"), and certain of its present and former

officers and directors, including ReiJane Huai ("Huai") and James Weber ("Weber"), alleging

violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15

U.S.C. §§ 78(j)(b) and 78(t), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

(Compl.[2] ¶ 2).  On November 4, 2010, the Court ordered this action to be consolidated with an

action commenced by Theresa Black[3] on October 8, 2010, and that all filings be under the above-

---

[1] The class action was originally commenced by Robbie Bensley.  By Order dated August
29, 2011, this Court appointed William Burns ("plaintiff" or "Burns") as Lead Plaintiff and
approved Burns' counsel, the Rosen Law Firm (the "Firm"), as Class counsel.  (See
Memorandum and Order, dated August 29, 2011 ("Order").  Theresa Black is the second
consolidated plaintiff.  (See discussion infra at fn. 3).  Collectively, they are referred to as
"plaintiffs."

[2] Citations to "Compl." refer to the plaintiffs' original Complaint, dated October 1, 2010,
bearing Docket No. 10 CV 4572.

[3] The Black v. FalconStor Software, Inc. action was filed under Docket No. 10 CV 4632.

captioned docket number.  The consolidated action seeks damages on behalf of all persons who

purchased or otherwise acquired FalconStor common stock (the "Class") between March 12,

2008[4] and September 29, 2010, inclusive (the "Class Period") (Am. Compl.[5] ¶ 3).

Currently pending before this Court, upon referral from the Honorable Edward R.

Korman, is plaintiffs' motion seeking an Order:  1) preliminarily certifying the Class for

purposes of settlement; 2) preliminarily approving the terms of the Settlement; 3) approving the

form and method of Notice to the Class; and 4) scheduling a Fairness Hearing.

FACTUAL BACKGROUND

The Consolidated Amended Complaint (the "Complaint") alleges that defendant

FalconStor develops, manufactures, and distributes network storage solutions, along with

providing related maintenance, engineering, and implementation services.  (Am. Compl. ¶ 4).

The Complaint further alleges that during the Class Period, defendants were engaged in an illicit

scheme to bribe employees of JPMorgan Chase & Co. ("JPMorgan") to purchase FalconStor's

products and services.  (Id. ¶¶ 5, 6).  As a result of the bribery scheme, FalconStor entered into

three software licensing and services contracts with JPMorgan, which accounted for 15% of the

Company's revenue for the first quarter of 2008 and 21% of the Company's revenue for the

---

[4]The Class Period as defined by the original Complaint ran from February 2009 through
September 29, 2010.  (Compl. ¶ 1).

[5]Citations to "Am. Compl." refer to plaintiffs' Consolidated Amended Complaint, filed
on December 19, 2011.  The plaintiffs filed their first amended complaint on November 3, 2011
after the Court appointed Burns as Lead Plaintiff and approved Burns' counsel as Class counsel.
Plaintiffs then filed a second amended complaint to substitute Huai for the Estate of ReiJane
Huai.  (See discussion infra p.3-4).

2

second quarter of 2009. (Id. ¶¶ 8, 30). Defendants Huai and Weber filed certifications attached to the Form 10-K, which was filed with the Securities and Exchange Commission (SEC) pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"); the certifications failed to disclose the bribery scheme, allowing FalconStor to inflate the value of its share price. (Id. ¶¶ 35-39). The Complaint alleges that "[h]ad the fraudulent scheme to inflate earnings been disclosed, investors would have known that FalconStor's revenues were based on criminal misconduct and that absent this criminal conduct, FalconStor's revenue would be materially lower." (Id. ¶ 40). According to the Complaint, by the end of December 2009, the Company reported revenue shortfalls that caused the stock price to fall, damaging the investors. (Id. ¶ 9).

On September 29, 2010, the Chairman, Chief Executive Officer, and President of FalconStor, ReiJane Huai, resigned from the Company. (Id. ¶ 10). The press release announcing Huai's resignation revealed that he "tendered his resignation following his disclosure that certain improper payments were allegedly made in connection with the Company's contract with one customer." (Id. ¶ 52). As a result of this revelation and Huai's resignation, the price of the Company's stock fell 22.4%, by $0.91 per share, closing at $3.15 per share after unusually heavy trading. (Id. ¶ 53).

Following this disclosure, Jie Lin, a FalconStor employee, and Ted Zahner, an employee of JPMorgan, entered pleas of guilty to violations of the Travel Act for committing commercial bribery. (Id. ¶ 11). Defendant Huai committed suicide on September 26, 2011, days before he was scheduled to take a plea to similar charges. (Id. ¶ 12). On October 6, 2011, a suggestion of death for Huai was filed with the Court. The plaintiffs then filed their Amended Complaint on

3

December 19, 2011.  The Complaint asserts:  1) violations of Section 10(b) of the Exchange Act,

and Rule 10b-5 promulgated thereunder, against defendants FalconStor, Weber, and the Estate of

ReiJane Huai and the Estate's executor (together the "Estate"); and 2) a claimed violation of

Section 20(a) of the Exchange Act against Weber and the Estate.  (Id. ¶¶ 71, 75).

Defendants filed a motion to dismiss on January 18, 2012.  While the motion was

pending, the parties undertook a mediation in an effort to reach a settlement of the case.

Although the mediation was not successful, the settlement discussions between the parties

continued over the next several months, and the parties eventually agreed to a proposed

settlement of $5,000,000 (Five Million Dollars), of which FalconStor will pay the entire amount

in cash.  The parties now seek to have the court certify the Class for purposes of the settlement as

well as approve of the terms of the settlement itself and the Class Notice.

## DISCUSSION

### I.  Rule 23 Class Certification

Rule 23(a) of the Federal Rules of Civil Procedure governs class certification, providing:

> One or more members of a class may sue or be sued as
> representative parties on behalf of all members only if:  (1) the
> class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class; (3) the
> claims or defenses of the representative parties are typical of the
> claims or defenses of the class; and (4) the representative parties
> will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to satisfying these prerequisites, a plaintiff also must satisfy one of the three

subdivisions of Rule 23(b):  (1) that separate actions pose a risk of inconsistent adjudications or

4

would substantially impair the ability of other individuals to protect their interests; (2) injunctive

or declaratory relief is sought concerning the class as a whole; or (3) common questions of law or

fact predominate over individual questions and a class action is superior to other methods for

bringing suit. Fed. R. Civ. P. 23(b).  See generally Amchem Prods., Inc. v. Windsor, 521 U.S.

591 (1997).  It is a plaintiff's burden to establish compliance with the requirements of Rule 23,

but in analyzing the issue of certification, the court accepts as true the allegations in the

complaint regarding the merits of the claim.  See D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D.

451, 454 (E.D.N.Y. 1996) (citation omitted).

 Pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure, "the court can make a

conditional determination of whether an action should be maintained as a class action, subject to

final approval at a later date." Collier v. Montgomery Cnty Hous. Auth., 192 F.R.D. 176, 181

(E.D. Pa. 2000).   For purposes of settlement only, defendants do not oppose conditional

certification.  (See Pls.' Notice of Non-Opposition[6] at 1); see also 4 Alba Conte, et al., Newberg

on Class Actions § 11.27 (4th ed. 2002) (providing "[w]hen the court has not yet entered a formal

order determining that the action may be maintained as a class action, the parties may stipulate

that it be maintained as a class action for the purpose of settlement only").

---

[6]Citations to "Pls.' Notice of Non-Opposition" refer to the Notice of Non-Opposition to
Motion for Preliminary Approval of Class Action Settlement, dated July 2, 2013, in which
plaintiffs note that any opposition to the motion for preliminary approval of the settlement was
due on July 1, 2013; since no oppositions have been filed, plaintiffs contend that the motion is
unopposed.

A.  The Requirements of Rule 23(a)

1.  Numerosity

In this case, there appears to be no dispute that the numerosity requirement of Rule 23(a) has been satisfied.  The Complaint alleges that there are potentially "hundreds of members" of the proposed Class.  (Am. Compl. ¶ 55; see Pls.' Mem.[7] at 3-4).  Since the Second Circuit has noted that "numerosity is presumed at a level of 40 members," Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir.), cert. denied, 115 U.S. 1122 (1995), the allegations in the Complaint clearly satisfy the standard of numerosity.  Indeed, courts have assumed that in cases involving nationally traded securities such as here, the numerosity requirement is met.  In re EVCI Career Colls. Holding Corp. Sec. Litig., No. 02 CV 10240, 2007 WL 2230177, at *12 (S.D.N.Y. July 27, 2007).  Factors such as the inconvenience of trying individual actions, as well as the financial resources of potential class members, weigh heavily in favor of a class action in this case.  See Savino v. Computer Credit, Inc., 173 F.R.D. 346, 351 (E.D.N.Y. 1997), aff'd, 164 F.3d 81 (2d Cir. 1998); see also Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993) (noting that such factors for determining the impracticality of joinder include the "judicial economy" that arises from avoiding multiple suits and the financial resources and ability of claimants to institute individual suits).  Accordingly, the Court finds the requirement of numerosity has been satisfied.

---

[7]Citations to "Pls.' Mem." refer to the Memorandum of Law in Support of Motion for Preliminary Approval of Class Action Settlement, dated June 14, 2013.

2. Common Questions of Fact or Law

In determining whether the plaintiffs can show that the claims of the potential Rule 23

Class members share common questions of law or fact, the Rule does not require that "'all

questions of law or fact raised be common.'" Savino v. Computer Credit, Inc., 173 F.R.D. at 352

(quoting Halford v. Goodyear Tire & Rubber Co., 161 F.R.D. 13, 18 (W.D.N.Y. 1995)).  As long

as "common questions . . . predominate," any differences in the circumstances raised by

individual members will not defeat the requirement of commonality.  In re Sadia, S.A. Sec.

Litig., 269 F.R.D. 298, 304 (S.D.N.Y. 2010).  In other words, "there need only be a single issue

common to all members of the class," as the "critical inquiry is whether the common questions

lay at the 'core' of the cause of action alleged." Savino v. Computer Credit, Inc., 173 F.R.D. at

352.  Indeed, in securities class actions, the commonality requirement is "applied permissively"

and there need only be a single issue common to all class members.  In re EVCI Career Colls.

Holding Corp. Sec. Litig., 2007 WL 2230177 at *13.

Here, there are several common legal and factual issues.  More specifically, plaintiffs'

claims involve:  (1) whether defendants made false statements of material fact; (2) whether the

false statements were made with the requisite degree of scienter; and (3) the proper measure of

damages.  (Pls.' Mem. at 4).  Given that the class members were all injured by the same

fraudulent scheme, see Teachers' Ret. Sys. of Louisiana v. ACLN Ltd., No. 01 Civ 11814, 2004

WL 2997957, at *4 (S.D.N.Y. Dec. 27, 2004), the Court finds that there are sufficient common

issues to satisfy the requirements of Rule 23(a)(2).

7

3. Typicality

Rule 23(a)(3) requires that the lead plaintiff's claims be typical of the claims of the class. Typicality has been found "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Robidoux v. Celani, 987 F.2d at 936. Typicality is "usually met irrespective of varying fact patterns which underlie individual claims" so long as the claims of the class representative are typical of the class members' claims. Bourlas v. Davis Law Assocs., 237 F.R.D. 345, 351 (E.D.N.Y. 2006) (quoting D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. at 456-57).

Here, the claims of the Lead Plaintiff, Mr. Burns, satisfy the requirements of the Rule in that Burns, like other members of the proposed Class, claims to have purchased shares of FalconStor common stock during the Class Period based on the false and misleading statements of the defendants. (Pls.' Mem. at 5; Am. Compl. ¶ 56). Irrespective of any differences in the amount of damages claimed or the availability of certain defenses, plaintiffs' claims stem from defendants' alleged wrongful conduct, and are therefore sufficiently typical to warrant certification.

4. Adequacy of Representation

In order to satisfy Rule 23(a)(4), which requires the interests of the class to be adequately represented, the Second Circuit has established a two-prong test. In re Drexel Burnham Lambert Grp., 960 F.2d 285, 291 (2d Cir. 1992). First, there must be a showing that class counsel is "'qualified, experienced and generally able' to conduct the litigation." Halford v. Goodyear Tire

8

& Rubber Co., 161 F.R.D. at 19 (quoting Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d

Cir. 1968), vacated on other grounds, 417 U.S. 156 (1974)).  Second, the class members'

interests may not be "'antagonistic'" to one another.  County of Suffolk v. Long Island Lighting

Co., 710 F. Supp. 1407, 1413 (E.D.N.Y. 1989), aff'd, 907 F.2d 1295 (2d Cir. 1990).

    Pursuant to Fed. R. Civ. P. 23(g), the Court must assess the adequacy of proposed Class

Counsel, looking to the work counsel has done in identifying and investigating the potential

claims, counsel's experience in handling class actions and claims of the type at issue in the case,

and counsel's knowledge of the applicable law.  See Fogarazzo v. Lehman Bros., Inc. 232 F.R.D.

176, 182 (S.D.N.Y. 2005); see also In re Fuwei Films Sec. Litig., 247 F.R.D. 432, 436 (S.D.N.Y.

2008) (stating: "'(1) there should be no conflict between the interests of the class and the named

plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be

qualified, experienced, and generally able to conduct the proposed litigation'") (quoting Pirelli

Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., 229 F.R.D. 395, 412-13

(S.D.N.Y. 2004)); Babcock v. Computer Assocs. Int'l, Inc., 212 F.R.D. 126, 131 (E.D.N.Y.

2003) (quoting In re Drexel Burnham Lambert Grp., Inc., 960 F.2d at 291).  The Court should

also consider the resources that counsel is able to commit in representing the Class.  Under the

PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain

counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).

    The Court previously considered the qualifications of the Firm in determining whether to

appoint Burns as Lead Plaintiff and whether Burns' selection of the Firm as Lead Counsel

9

satisfied the requirements of the PSLRA.[8]   (See Order at 24).   In support of plaintiffs' current

request for preliminary approval of the settlement, the Firm has submitted a resume, indicating

that the Firm has been previously found to be well suited to serve as class counsel in securities

class action lawsuits. (Pls.' Mem. Ex. 1).   As this Court noted in its prior Order appointing Mr.

Burns as Lead Plaintiff, the Firm listed 24 securities cases in which the Rosen Firm had

previously participated as lead or co-lead counsel, and listed nine securities cases in which the

Firm was serving as lead counsel at the time of Burns' application.   (Order at 24 (citing Kim

Decl., Ex. 4)).   Moreover, since the time of its appointment as Class Counsel, the Firm has

demonstrated its ability to prosecute this case diligently and to represent the interests of the

potential Rule 23 Class, as shown by the extensive effort that it has engaged in to settle this

action on behalf of all Class members.   Based on the detailed description of the educational

background and legal experience of the five attorneys in the Firm, and particularly their extensive

experience in similar cases, the Court agrees that "the Rosen Law Firm is well-qualified to serve

as lead counsel in this matter."   In re Fuwei Films Sec. Litig., 247 F.R.D. at 439.

     Class Counsel also represents that the Lead Plaintiff, Burns, has no conflict of interest

with the members of the potential Rule 23 Class. (Pls.' Mem. at 5).   In order for a potential or

actual conflict to defeat certification, it "must be fundamental."   In re Flag Telecom Holdings,

---

[8]The PSLRA sets forth certain parameters for the Court to use in determining which member or members of the class would be most capable of representing the class as lead plaintiff.  See 15 U.S.C. § 78u-4(a)(3)(B).  Among other things, the PSLRA requires that the lead plaintiff "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); see also Hevesi v. Citigroup, Inc., 366 F.3d 70, 81 (2d Cir. 2004) (holding that "[t]wo objective factors inform the district court's appointment decision:  the plaintiffs' respective financial stakes in the relief sought by the class, and their ability to satisfy the requirements of Rule 23").

Ltd. Sec. Litig., 574 F.3d 29, 36 (2d Cir. 2009) (internal quotation marks and citations omitted).

Based on the nature of Lead Plaintiff's claims and on the representation that no conflict of

interest exists, the Court finds that Lead Plaintiff's claims are so interrelated with those of the

other potential Rule 23 Class members that he will be an adequate class representative.


      B.   The Requirements of Rule 23(b)(3)

          1.   Common Questions Predominate Over Individual Issues

      Plaintiffs must also establish that the proposed class meets the requirements of Fed. R.

Civ. P. 23(b)(3).  Under Rule 23(b)(3), a proposed class must be sufficiently cohesive and

common issues must predominate in order to warrant adjudication as a class.  Amchem Prods,

Inc. v. Windsor, 521 U.S. at 623.  Courts focus on whether common questions related to liability

exist.  See Smilow v. Sw. Bell Mobile Sys. Inc., 323 F.3d 32, 40 (1st Cir. 2003); Iglesias-

Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 372-73 (S.D.N.Y. 2007).  Even if there are

defenses that affect class members differently, that "does not compel a finding that individual

issues predominate over common ones." In re Visa Check/MasterMoney Antitrust Litig., 280

F.3d 124, 138 (2d Cir. 2001) (quoting Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288,

296 (1st Cir. 2000)), overruled on other grounds, In re IPO Secs. Litig., 471 F.3d 24 (2d Cir.

2006).

      In this case, plaintiffs argue that if each individual Class member were to bring his own

suit, the member would have to prove the same misrepresentations and omissions in order to

prevail.  Thus, plaintiffs argue that the class issues predominate in this case over any individual

issues that might affect plaintiffs differently.  (Pls.' Mem. at 7); see Amchem Prods., Inc. v.

Windsor, 521 U.S. at 625 (holding that in securities fraud class actions, the predominance of

class issues is "readily met").

Thus, the Court finds that common questions predominate in this case.


2.  Class Action as Superior Method of Resolution

Additionally, to satisfy Rule 23(b)(3), plaintiffs must demonstrate that "a class action

would achieve economies of time, effort, and expense, and promote uniformity of decision as to

persons similarly situated, without sacrificing procedural fairness or bringing about other

undesirable results."  Brown v. Kelly, 609 F.3d 467, 483 (2d Cir. 2010) (citation and internal

quotation marks omitted).  The Rule requires the Court to consider:

> [(1)] the class members' interests in individually controlling the
> prosecution or defense of separate actions; [(2)] the extent and
> nature of any litigation concerning the controversy already begun
> by or against class members; [(3)] the desirability or undesirability
> of concentrating the litigation of the claims in the particular forum;
> and [(4)] the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

In this case, plaintiffs claim that most of the Class members are individuals for whom the

prosecution of this case on an individualized basis would be costly and not a practical alternative.

(Pls.' Mem. at 7).  Moreover, given that the parties have agreed to resolve the case, the question

of manageability is of no consequence.  (Id. (citing Fed. R. Civ. P. 23(b)(3)(D))); see Amchem

Prods., Inc. v. Windsor, 521 U.S. at 620 (noting that when a court considers class certification for

a settlement, it "need not inquire whether the case, if tried, would present intractable

12

management problems . . . for the proposal is that there be no trial." (citation omitted)).

Moreover, since the plaintiffs and the class members have limited financial resources, proceeding

as a class action will achieve economies of scale for the class members and preserve judicial

resources by consolidating common issues of fact and law, with the result of preserving public

confidence in the system by avoiding inconsistent adjudications. Amchem Prods., Inc. v.

Windsor, 521 U.S. at 615; United States v. City of New York, 276 F.R.D. 22, 48-49 (E.D.N.Y.

2011). Furthermore, in this case, there is no indication that the potential Rule 23 Class members

desire to control their own cases.

   As a result, the Court finds that a class action is the superior method of resolution in this

case.


### 3.  Class Certification

   The Court respectfully recommends that there be a finding that plaintiffs have satisfied

the requirements of Rule 23(b)(3).  Moreover, for purposes of the settlement only, defendants do

not dispute the certification of the class.  (Pls.' Mem. at 8).  Accordingly, pursuant to Rule

23(b)(3), the Court hereby respectfully recommends that the district court provisionally certify a

Rule 23 Class for settlement purposes only, consisting of all persons who purchased or otherwise

acquired FalconStor common stock between March 12, 2008 and September 29, 2010, inclusive.


## II.  Preliminary Approval of the Class Settlement

   The plaintiffs seek preliminary approval of the proposed settlement, as memorialized in

the Stipulation and Agreement of Settlement (the "Stipulation").

### A.   Approval of the Rule 23 Class Settlement

#### 1.   Standards

To grant preliminary approval of a class settlement under Rule 23(e), the Court must

determine that the proposed settlement is "fair, adequate, and reasonable, and not the product of

collusion." Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000) (citations omitted); see Fed. R.

Civ. P. 23(e).  Judicial policy favors the settlement and compromise of class actions.  Wal-Mart

Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116-17 (2d Cir. 2005); see also In re Warfarin

Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004).  Whether a settlement is fair is a

determination within the sound discretion of the court.  Levitt v. Rodgers, 257 Fed. App'x 450,

453 (2d Cir. 2007) (citing In re Ivan F. Boesky Sec. Litig., 948 F.2d 1358, 1368 (2d Cir. 1991)).

Generally, approval of a class action settlement involves a two-step process:  first, the

court preliminarily approves the proposed settlement by evaluating the written submissions and

informal presentation of the settling parties and the negotiating process leading to the settlement,

Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 116; second, the court holds a fairness

hearing to "determine whether the settlement's terms are fair, adequate, and reasonable . . . ."

Capsolas v. Pasta Res., Inc., No. 10 CV 5595, 2012 WL 4760910, at *4 (E.D.N.Y. Oct. 5, 2012).

In evaluating a proposed settlement in order to grant preliminary approval, the court need only

find that there is "probable cause" to submit the settlement to the class members and to hold a

fairness hearing.  Hernandez v. Merrill Lynch & Co., No. 11 CV 8471, 2012 WL 5862749, at *1

14

(S.D.N.Y. Nov. 15, 2012) (quoting In re Traffic Exec. Ass'n E. R.Rs., 627 F.2d 631, 634 (2d Cir.

1980)).

The Second Circuit has enumerated nine factors to guide courts in evaluating the

substantive fairness of a proposed settlement:

> (1) [T]he complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement; (3) the stage of the
> proceedings and the amount of discovery completed; (4) the risks
> of establishing liability; (5) the risks of establishing damages; (6)
> the risks of maintaining the class action through the trial; (7) the
> ability of the defendants to withstand a greater judgment; (8) the
> range of reasonableness of the settlement fund in light of the best
> possible recovery; and (9) the range of reasonableness of the
> settlement fund to a possible recovery in light of all the attendant
> risks of litigation[.]

City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted),

abrogated on other grounds, Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000); see

also D'Amato v. Deutsche Bank, 236 F.3d 78, 86 (2d Cir. 2001); Garcia v. Pancho Villa's of

Huntington Village, No. 09 CV 486, 2012 WL 5305694, at *4 (E.D.N.Y. Oct. 4, 2012).

The court must also determine if the settlement was "achieved through arms-length

negotiations by counsel with the experience and ability to effectively represent the class's

interests." Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999) (citing

Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982)); see also D'Amato v. Deutsche Bank,

236 F.3d at 85 (noting that the district court must "determine[] a settlement's fairness by

examining the negotiating process leading up to the settlement as well as the settlement's

substantive terms"); In re Nissan Radiator/Transmission Cooler Litig., No. 10 CV 7493, 2013

WL 4080946, at *4 (S.D.N.Y. May 30, 2013). In reviewing a proposed settlement, the court has

the "'fiduciary responsibility of ensuring that the settlement is . . . not a product of collusion, and

that the class members' interests [were] represented adequately.'" Clement v. American Honda

Fin. Corp., 176 F.R.D. 15, 29 (D. Conn. 1997) (internal citation omitted) (quoting In re Warner

Commc'ns Secs. Litig., 798 F.2d 35, 37 (2d Cir. 1986)).  Although the Court is not required to

make a finding of fairness as to the underlying settlement at this time, the Grinnell factors are

instructive.  See Torres v. Gristede's Operating Corp., Nos. 04 CV 3316, 08 CV 8531, 08 CV

9627, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (noting that "[p]reliminary approval of a

settlement agreement requires only an initial evaluation of the fairness of the proposed settlement

on the basis of written submissions and an informal presentation by the settling parties") (internal

quotation marks and citations omitted).


###### 2.  Analysis of Procedural Fairness

The parties represent that the proposed $5,000,000 settlement was entered into after

extensive arm's-length negotiations between counsel, that spanned several months' time and

included an all-day mediation under the supervision of an independent mediator, David

Geronemus, Esq.  (Pls.' Mem. at 10).  According to the plaintiffs, "[t]he negotiations were at all

times hard-fought and at arm's length, and have produced a result that the settling parties believe

to be in their respective best interests."  (Id.)  Moreover, plaintiffs represent that there was

"absolutely" no basis to hint at collusion. (Id.)

The settlement is presumptively fair when a class settlement has been reached after

"arm's-length negotiations between experienced, capable counsel after meaningful discovery,"

16

see Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 116.  The parties entered into

settlement negotiations while a motion to dismiss the complaint was pending before the court.

Although no meaningful discovery took place, the parties have gained sufficient information

during the course of mediation and settlement discussions to allow them to make a reasoned

evaluation of the plaintiffs' claims.  Given that the parties have gained sufficient information

about the claims, and given the negotiations took place at arms-length, the Court finds that there

was procedural fairness in reaching the proposed settlement.

### 3.   Analysis of Substantive Fairness

#### (a)   Complexity, Expense, and Likely Duration of the Litigation

Turning to the Grinnell factors, while the expense and likely duration of this litigation is

difficult to assess, the Court notes that defendants deny liability.  (Stipulation[9] at 3).  Indeed,

defendants denied liability when they filed a motion to dismiss in lieu of an Answer.  Although

the defendants' motion to dismiss was withdrawn due to the settlement agreement, it suggests

that trial in this case would be contested and potentially would be long and complicated.

Moreover, class actions, especially in the context of securities law claims, are inherently

complex.  See Velez v. Novartis Pharm. Corp., No. 04 CV 9194, 2010 WL 4877852, at *12

(S.D.N.Y. Nov. 30, 2010); see also In re Austrian & German Bank Holocaust Litig., 80 F. Supp.

2d 164, 174 (S.D.N.Y. 2000), aff'd, 236 F.3d 78 (2d Cir. 2001).  In the absence of a settlement,

---

[9]Citations to "Stipulation" refer to the Stipulation and Agreement of Settlement, filed
with the Court on June 14, 2013.

this case would require a substantial expenditure of money and time by both parties in pursuing

this litigation.  First, the parties would need to engage in substantial discovery that would be

needed to establish liability and damages, including depositions of numerous class members,

defendants, and other non-parties.  In addition, because this settlement was achieved prior to the

disposition of defendants' motion to dismiss, if the case were to proceed, there would be a need

to expend additional funds on motion practice, including motions for oppositions to certification

and decertification, in the event that the case survived the motion to dismiss.  A trial in this

matter would likely consume tremendous time and resources and, even assuming plaintiff were

successful in establishing defendants' liability at trial, there is always the potential for an appeal,

which would inevitably produce delay and increase costs to all parties.  Thus, this factor of

potential protracted litigation favors settlement.

(b)  Reaction of Class to Settlement

The reaction of the class to the settlement is an issue that can be addressed only after

notice of the proposed Stipulation has been sent to the Class and the time for objections has

passed.  Since notice of the settlement has not been distributed to the potential Rule 23 Class

members, the Court need not address this issue at this time.

(c)  Establishing Liability and Damages and Maintaining the Action
Through Trial

The risk of establishing liability also favors settling this dispute.  Defendants note that the

settlement does not mean that they admit or concede fault, liability, wrongdoing, or damage.

(Stipulation at 3).  Plaintiffs' likelihood of success should be evaluated in light of the plaintiffs'

18

theory of recovery, and, considering the risks of appeal and the prolonged nature of this type of

securities fraud litigation, the Court finds that this factor favors approval of the proposed

settlement.

(d)   Range of Reasonableness of Settlement Fund

Moreover, there is no way to determine with certainty what amount of damages would be

awarded in the event of a successful prosecution of the litigation. See In re Union Carbide Corp.

Consumer Prods. Bus. Sec. Litig., 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (quoting In re

"Agent Orange" Prod. Liab. Litig., 597 F.Supp. 740, 762 (E.D.N.Y. 1984) (noting that "[d]ollar

amounts are judged . . . in light of the strengths and weaknesses of plaintiffs' case"); Republic

Nat'l Life Ins. Co. v. Beasley, 73 F.R.D. 658, 668 (S.D.N.Y. 1977) (citing Milstein v. Werner, 57

F.R.D. 515, 524 (S.D.N.Y. 1972).

Where the settlement provides "a meaningful benefit" to the class, settlements have been

found reasonable. In re Metlife Demutualization Litig., 689 F. Supp. 2d 297, 340 (E.D.N.Y.

2010). "It is well-settled law that a cash settlement amounting to only a fraction of the potential

recovery will not per se render the settlement inadequate or unfair." Johnson v. Brennan, No. 10

CV 4712, 2011 WL 4357376, at *11 (S.D.N.Y. Sept. 16, 2011) (quoting Officers for Justice v.

Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982)). When the proposed settlement

provides a meaningful benefit to the class when considered against the obstacles to proving

plaintiffs' claims with respect to damages in particular, the agreement is reasonable. See In re

Metlife Demutualization Litig., 689 F. Supp. 2d at 340.

Here, according to plaintiffs, Class Counsel has consulted with a damages consultant,

whose analysis demonstrates that the settlement amount represents over 17% of the damages

suffered by the Class.  (Id. at 11).  At this point, Class Counsel claims to have carefully evaluated

the strengths and weaknesses of the matter and similarly evaluated the merits of the settlement,

and plaintiffs submit that the settlement amount is "a very good recovery."  (Id.)  Citing In re

Charter Communications, Inc. Securities Litigation, No. MDL 1506, 2005 WL 4045741, at *6

(E.D. Mo. June 30, 2005), plaintiffs compare the instant settlement of 17% to the "'average 5.5%

- 6.2% of estimated losses recovered in securities fraud class [action] settlements since 1995,'" to

conclude that it is "well within the range of possible approval."  In addition, the plaintiff points

out that the compensation proposed for Lead Counsel is not "excessive" in that they will apply

for an award of one-third, plus expenses not to exceed $45,000, all subject to Court approval.

When counsel has sufficient information to appreciate the merits of the case, settlement is

favored.  Velez v. Novartis Pharm. Corp., 2010 WL 4877852, at *13; In re Warfarin Sodium

Antitrust Litig., 391 F.3d at 537.  Given the proposed settlement amounts and the risks

incumbent in continued litigation, the Court respectfully recommends that this factor favors

approval of the proposed settlement.

In summary, on the basis of the foregoing discussion of the Grinnell factors, the Court

respectfully recommends that the Court find the terms of the proposed settlement for the Rule 23

Class to be fair and reasonable under the circumstances present in this case.


III. Adequacy of Notice

Pursuant to the Federal Rules of Civil Procedure, the "court must direct notice in a

20

reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  Under Rule 23(e)(1), the "'[c]ourt has virtually complete discretion as to the manner of giving notice to class members.'"  In re MetLife Demutualization Litig., 689 F. Supp. 2d at 345 (quoting Handschu v. Special Servs. Div., 787 F.2d 828, 833 (2d Cir. 1986)).  In a Rule 23(b)(3) class action such as this, "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" must be provided to the class. Fed. R. Civ. P. 23(c)(2)(B).[10]  In Eisen v. Carlisle & Jacquelin, the Supreme Court held that individual notice, as opposed to general published notice, is required by Rule 23(c)(2) for class members who are identifiable through reasonable effort.  417 U.S. at 173-76 (holding that "individual notice to identifiable class members is not a discretionary consideration" but rather, is an "unambiguous requirement of Rule 23"); Becher v. Long Island Lighting Co., 64 F. Supp. 2d at 177.  Notice is adequate if it "'fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  Wal-Mart Stores , Inc. v. Visa U.S.A. Inc., 396 F.3d at 114 (quoting Weinberger v. Kenrick, 698 F.2d at 70).

Here, the proposed Notice of Class Action Settlement provides the following information:  (1) an explanation of who may recover under the settlement and the rights of the

---

[10]The Rule further provides that, for any class certified under Rule 23(b)(3), the notice must "concisely and clearly state . . . (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

Class members, including the process for lodging objections to the settlement; (2) a brief

contextual background to this lawsuit, including the nature, history and progress of the litigation;

(3) a summary of legal rights and options under the proposed settlement; (4) an explanation of

the process for filing a proof of claim; (5) an explanation of the benefits and terms of the

Settlement Agreement, including the allocation formula; (6) an overview of attorneys' fees and

expenses sought by Class Counsel; (7) the result if the Court approves or does not approve the

Settlement Agreement; (8) an explanation of the Fairness Hearing and the date, time, and place

of the Hearing; and (9) necessary information for Class Members who wish to examine court

records. (See Pls.' Mem. at 12; Proposed Notice[11]). The Notice also contains information for

securities brokers and nominee holders for forwarding the Notice to persons for whom the

nominees held shares in street name. (Id.)

  In this case, the Notice provides that Class counsel shall, within twenty-eight calendar

days of the entry of the Court's Order preliminarily approving the settlement, mail, by first class

mail, postage prepaid, the Notice and Proof of Claim to all potential Class members who can be

identified through reasonable efforts. (Pls.' Mem. at 12; see also Proposed Order[12] ¶ 10). Thirty-

five days after entry of the Preliminary Approval Order, a Summary Notice shall be published

over the internet on *GlobeNewswire* and *Investor's Business Daily*. (Pls.' Mem. at 13). The

---

[11]Citations to "Proposed Notice" refer to the Notice of Pendency and Proposed Settlement of Class Action, filed on August 16, 2013.

[12]Citations to "Proposed Order" refer to the Proposed Order Preliminarily Approving Settlement and Providing for Notice, filed as an attachment to Stipulation and Agreement of Settlement on June 14, 2013.

Court will schedule the Fairness Hearing at least 120 calendar days after the entry of the Preliminary Approval Order so that there is sufficient for the Notice and Proof of Claims to be sent to the Class. (Id. at 12-13).

The Court finds that the proposed Notice and this means of notification are sufficient. The proposed Notice itself is sufficiently detailed so as to inform the Rule 23 Class members of their rights and obligations, and the method of notice is practical and likely effective in reaching the affected individuals. See Weinberger v. Kendrick, 698 F.2d at 71-72 (stating that mailing individual notices to class members at their last known addresses was a sufficient means of notification under the circumstances). As such, the Court also approves the other materials submitted by the settling parties, which include the Notice of Pendency and Proposed Settlement of Class Action, the Proposed Summary Notice of Proposed Class Action Settlement, and the Proof of Claim and Release form. Given the detailed nature of these documents, along with the fact that defendants have not mounted an opposition to them, the Court respectfully recommends approval of these forms.

CONCLUSION

Accordingly, for the reasons stated above, the Court respectfully recommends that: (1) there be provisional certification of the Rule 23 Class for purposes of settlement; (2) the court grant preliminary approval of the proposed settlement, as articulated in the Settlement Agreement; (3) the court appoint plaintiff Burns as the representative of the Rule 23 Class; (4) the court appoint the Rosen Law Firm, P.A., as Class Counsel; and (5) the proposed Notice of

Class Action Settlement and the proposed method of distribution be approved.  The Fairness

Hearing will be scheduled once the District Court has reviewed the Report and Recommendation

Any objections to this Report and Recommendation must be filed with the Clerk of the

Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report.  Failure

to file objections within the specified time waives the right to appeal the District Court's order.

See 28 U.S.C. § 636(b)(1) (2009); Fed. R. Civ. P. 6(a), 6(d), 72(b); Small v. Secretary of Health

& Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties

either electronically through the Electronic Case Filing (ECF) system or by mail.


**SO ORDERED**.

Dated: Brooklyn, New York
       October 9, 2013

/s/  CHERYL POLLAK

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York


24